UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD KRANTZ, derivatively on behalf of
Nominal Defendant CVS CORPORATION,

                Plaintiff,

v.

THOMAS M. RYAN, DAVID B. RICKARD,
THOMAS P. GERRITY, STANLEY P.
GOLDSTEIN, MARIAN L. HEARD, TERRY
R. LAUTENBACH, TERRENCE MURRAY,
SHELI Z. ROSENBERG, and WILLIAM H.
JOYCE,

                Defendants,

and

CVS CORPORATION,

                Nominal Defendant.

C.A. No. 04-12650-REK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

Of Counsel:

Dennis E. Glazer
Trisha Lawson
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000

Dated: March 18, 2005

Michael S. Gardener (BBO #185040)
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

SUMMARY OF ALLEGATIONS ............................................................................. 3

I.   The Parties ................................................................................................... 3

II.  Plaintiff's Claims ......................................................................................... 3

ARGUMENT .............................................................................................................. 5

I.   Plaintiff's Claims Should Be Dismissed For Failure to Make A Pre-Suit Demand ......... 5

     A.   Plaintiff Must Plead With Particularity that Demand Was Excused Under Delaware Law ................................................................................. 5

     B.   Plaintiff Has Not Adequately Pled Demand Futility Under Delaware Law ......... 8

          1.   Plaintiff Has Not Demonstrated That A Majority of the Board Face a Substantial Likelihood of Liability for the Claims in Counts I and III ........................................................................................................ 10

          2.   Plaintiff Has Not Demonstrated That the Board Would Face Substantial Liability for the Allegations in Count II of the Complaint ......................................................................................... 12

II.  Plaintiff's Claims are Time-Barred ........................................................... 13

     A.   Plaintiff's Claims Are Time-Barred Under Massachusetts Law ......... 14

     B.   Plaintiff's Claims are Also Time-Barred Under Delaware Law ......... 17

III. Plaintiff's Claim Must be Dismissed For Lack of Subject Matter Jurisdiction ............ 18

CONCLUSION ........................................................................................................ 19

## TABLE OF AUTHORITIES

### Cases

Page

Aronson v. Lewis, 473 A.2d 805 (Del. 1984) ........................................................6,8,9,12

Bank One, Texas, N.A. v. Montle, 964 F. 2d 48 (1st Cir. 1992) .....................................19

In re Baxter Int'l Inc. S'holder Litig., 654 A.2d 1268 (Del. Ch. 1995) ...............8,9,10,11

Beacon Wool Corp. v. Johnson, 331 Mass. 274 (1954) ..................................................17

Brehm v. Eisner, 746 A.2d 244 (Del. 2000) ...............................................................6,7,8

In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996) ...............11,12

Citizens Comm. to Save Land Grant R.R. v. Burlington N., Inc.,
    708 F. 2d 1430, 1435 (9th Cir. 1983) ....................................................................19

Continuing Creditors Comm. of Star Telecomms., Inc., v. Edgecomb,
    No. Civ.A.03-278-KAJ, 2004 WL 2980736 ( D. Del. Dec. 21, 2004) .................18

Cooper v. Cianfrocca, No. 01 CIV. 4749-LAK, 2001 WL 640808
    (S.D.N.Y. June 7, 2001) .......................................................................................19

Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643 (1994) .........................................13

David B. Lilly Co. v. Fisher, 18 F.3d 1112 (3d Cir. 1994) .............................................18

Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501 (1997) ............................14,17

Diceon Electronics, Inc. v. Calvary Partners, 772 F. Supp. 859
    (D. Del. 1991) .......................................................................................................10

Epstein v. C.R. Bard, Inc., No. Civ. A.03-12297-RWZ, 2004 WL 1598912
    (D. Mass. July 19, 2004) ......................................................................................14

Gonzalez Turul v. Rogatol Distribs., Inc., 951 F.2d 1 (1st Cir. 1991) .............................6

Graham v. Smith, 292 F. Supp. 2d 153 (D. Me. 2003) ..................................................17

Grimes v. Donald, 673 A.2d 1207 (Del. 1996) ................................................................6

Page

Grobow v. Perot, 539 A.2d 180 (Del. 1988) ........................................7

Grossman v. Johnson, 89 F.R.D. 656 (D. Mass. 1981) ...................11

Guttman v. Huang, 823 A.2d 492, 501 (Del. Ch. 2003) ....................9

Guerra v. Teradyne, Inc., No. 01-11789-NG, 2004 WL 1467069
     (D. Mass. Jan. 16, 2004) ..........................................10

Haber v. Bell, 465 A.2d 353 (Del. Ch. 1983) .................................8

Halpern v. Barran, 313 A.2d 139 (Del. Ch. 1973) ........................18

Harrison v. Netcentric Corp., 433 Mass. 465 (2001) .....................17

Howell v. Birnberg, No. 922842A, 1994 WL 879659
     (Mass. Super. Feb. 10, 1994) ...................................14

Joseph A. Fortin Constr., Inc., v. Mass. Housing Fin. Agency,
     392 Mass. 440 (1984) .............................................15

Kahn v. Kahn, 429 Mass. 572 (1999) ........................................13

Kamen v. Kemper Fin. Servs., 500 U.S. 90 (1991) ..........................5

Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726 (Del. 1988) .............6

Kaufman v. Belmont, 479 A.2d 282 (Del. Ch. 1984) .......................8

Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941) ...........13

Kowalski v. Gagne, 914 F.2d 299 (1st Cir. 1990) .........................17

Landy v. D'Alessandro, 316 F. Supp. 2d 49 (D. Mass. 2004) ..............*passim*

Levine v. Smith, C.A. No. 8833, 1989 WL 150784
     (Del. Ch. Nov. 27, 1989), aff'd, 591 A.2d 194 (Del. 1991) ...................7

Levine v. Smith, 591 A.2d 194 (Del. 1991) ..............................1,6,7

Page

Lussier v. Runyon, 50 F.3d 1103 (1st Cir. 1995) ............................................................17

Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123 (1st Cir. 1997) ...............................14

McKenna v. Scherr, No. 293427, 2004 WL 1854146
    (Mass. Land Court Aug. 19, 2004) ........................................................................15

New England Tel. & Tel. Co. v. Gourdeau Constr. Co.,
    419 Mass. 658 (1995) ............................................................................................13

Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989) ......................................19

Orman v. Cullman, 794 A.2d 5 (Del. Ch. 2002) .............................................................10

Pogostin v. Rice, 480 A.2d 619 (Del. 1984) .....................................................................8

Rales v. Blasband, 634 A.2d 927 (Del. 1993) .............................................................7,8,9

Richardson v. Graves, C.A. No. 6617, 1983 WL 21109
    (Del. Ch. June 17, 1983) .........................................................................................8

Seidel v. Lee, 954 F. Supp. 810 (D. Del. 1996) ...............................................................18

Soler v. Puerto Rico Tel. Co., 230 F. Supp. 2d 232 (D. P.R. 2002) .................................19

Stark v. Advanced Magnetics, Inc. 50 Mass. App. Ct. 226
    (Mass. App. Ct. 2000) ...........................................................................................15

Spiegel v. Buntrock, 571 A.2d 767 (Del. 1990) ................................................................6

Woodcock v. Am. Inv. Co., 376 Mass. 169 (1978) ..........................................................14

## Statutes & Rules

28 U.S.C. § 1332..........................................................................................................3,18

8 Del. Code Ann. § 141(a) (2003) ....................................................................................6

8 Del. Code Ann. § 102(b)(7) (2004) ..............................................................................10

Page

10 Del. Code Ann. § 8106 (2004) ................................................................................18

Del. Ch. Ct. R. 23.1. .............................................................................................2,7

Federal Rule of Civil Procedure 12(b)(1) .............................................................1,19, 20

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1,7,18,20

Federal Rule of Civil Procedure 23.1 ..................................................................... *passim*

Mass. Gen. Laws ch. 260, § 2A (2004) .........................................................................14

Other

Mass. Prac. Series TM Civil Practice, Part 5, § 15.14 (3d ed. 2004) .............................13

Restatement (Second) of Conflicts of Laws § 142 ....................................................13,14

Defendants Thomas M. Ryan, David B. Rickard, Thomas P. Gerrity, Stanley P. Goldstein, Marian L. Heard, Terrence Murray, Sheli Z. Rosenberg, and William H. Joyce and nominal defendant CVS Corporation ("CVS" or the "Company") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the verified derivative complaint dated December 17, 2004 (the "Complaint") pursuant to Federal Rules of Civil Procedure 23.1, 12(b)(6), and 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiff Richard Krantz ("Plaintiff") has copied nearly verbatim the factual allegations of "securities fraud" complaints filed against CVS more than three years ago and attempted to recast those allegations as derivative claims asserted on CVS's behalf. CVS, together with the individual defendants, respectfully submits that the Complaint should be dismissed because (i) Plaintiff has not alleged particularized facts that would excuse his admitted failure to make a pre-suit demand on CVS's board of directors to pursue the instant claims, (ii) the claims are time-barred, and (iii) Plaintiff has failed to allege a basis for this Court to exercise subject matter jurisdiction.

CVS is a Delaware corporation, and the standards for asserting a derivative claim on its behalf therefore are governed by Delaware law. The courts of that state have long recognized that "[t]he directors of a corporation and not its shareholders manage the business and affairs of the corporation, and, accordingly, the directors are responsible for deciding whether to engage in derivative litigation." Levine v. Smith, 591 A.2d 194, 200 (Del. 1991) (internal citations omitted), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). Federal law reflects this deference to directors' control over corporate claims by requiring a derivative plaintiff to "allege with particularity" the efforts he took before commencing litigation to obtain

the action he desires from the board or the reasons why such a pre-suit demand on the board would have been futile. <u>See</u> Fed. R. Civ. P. 23.1. Delaware law is identical. <u>See</u> Del. Ch. Ct. R. 23.1.

In this case, Plaintiff admits that he made no pre-suit demand, <u>see</u> Compl. ¶ 127, and he has not advanced allegations that would support the conclusion that such a demand would have been futile. One of Plaintiff's three derivative claims is asserted against only Messrs. Ryan and Rickard. Mr. Rickard is not on the Company's board, and Plaintiff has offered no basis for the Court to infer that a majority of the board would have declined to assert a claim against Messrs. Ryan and Rickard if the directors were of the view that pursuing such a claim was in the best interests of the Company.

As for Plaintiff's two generic breach of fiduciary duty claims, the Complaint similarly offers no grounds to infer that a pre-suit demand on the CVS board would have been futile. Indeed, as to at least eight of the nine directors at the time that a hypothetical pre-suit demand must be evaluated – two of whom are not named as defendants or even mentioned in the Complaint – there are no factual allegations that would rebut the presumption of disinterestedness and independence that is afforded to them as directors of a Delaware corporation. Plaintiff's conclusory assertion that "[a] majority of the members of the Board exhibited a sustained and systematic failure to fulfill their fiduciary duties and therefore face a substantial likelihood of being held liable" (Compl. ¶ 12) cannot establish demand futility, particularly where, as here, the directors would face no monetary liability because of the exculpatory provision of CVS's certificate of incorporation.

For these reasons, as articulated further below, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 23.1. The Complaint should be dismissed for the additional reasons

2

that all of Plaintiff's claims are barred by the applicable three-year statute of limitations and

Plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction. The

Complaint premises jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332.

Plaintiff, however, has not pleaded the citizenship of all of the parties or the dollar value of the

amount in controversy.

### SUMMARY OF ALLEGATIONS

I.    The Parties

Plaintiff Richard Krantz claims that he is, and was at all relevant times, a stockholder of

CVS. (Compl. ¶ 11). Plaintiff purports to bring the claims at issue in the Complaint derivatively

on behalf of the Company. (Id. ¶ 2).

CVS is named as nominal defendant as the beneficiary of the asserted derivative claims.

(Id.) In addition, the Complaint names as individual defendants the Company's Chairman,

President and Chief Executive Officer Thomas M. Ryan; Executive Vice President and Chief

Financial Officer David B. Rickard; outside directors Terrence Murray, Sheli Z. Rosenberg,

Thomas P. Gerrity, Stanley P. Goldstein, Marian L. Heard and William H. Joyce; and deceased

former outside director Terry R. Lautenbach.[1]  (Id. ¶¶ 13-21).

II.    Plaintiff's Claims

The Complaint contains three claims. In Count I, Plaintiff appears to challenge stock

sales made during 2001 by Mr. Ryan and an officer of the Company who is not named as a

defendant. Plaintiff alleges that "[a]t the time of their [sic] stock sales, each defendant knew that

when CVS's imprudent and illegal conduct was publicly disclosed, the price of the Company's

---

[1] Defendants' motion to dismiss the Complaint is filed on behalf of all defendants other than Mr. Lautenbach, who passed away before the Complaint was filed.

3

common stock would dramatically decrease. The defendants' sales or allowance of sale [sic] of CVS common stock based on their knowledge of this material non-public information was a breach of their fiduciary duties of loyalty and good faith." (Id. ¶ 131). Plaintiff seeks the imposition of a constructive trust on any profits obtained by the defendants as a result of the allegedly improper sales. (Id. ¶ 132).

In Count II, Plaintiff alleges that Messrs. Ryan and Rickard were "unjustly enriched by their receipt of proceeds from their improper sales of CVS stock" (id. ¶ 34), notwithstanding that the "Insider Sales" section of the Complaint does not allege that Mr. Rickard sold any CVS stock during the relevant time period. (See id. ¶¶ 98-103). Plaintiff also alleges in Count II that Messrs. Ryan and Rickard "were further unjustly enriched by their receipt of [] cash bonuses." (Id. ¶ 135). Plaintiff asserts that it would be "unconscionable and contrary to fundamental principles of equity for Ryan and Rickard to retain" these allegedly unjust benefits, and he seeks disgorgement. (Id. ¶ 136).

In Count III, Plaintiff alleges that Defendants breached their fiduciary duties of good faith by "knowingly causing or allowing the Company to engage in [] imprudent and illegal conduct . . . , and, when placed on notice of the wrongdoing, failing to make a good faith effort to prevent or correct it." (Id. ¶ 139). Plaintiff claims that Defendants' alleged breaches of their fiduciary duties harmed the Company by causing it to sustain "enormous damages through . . . its defense of a consolidated class action in this Court against the Company brought under the federal securities laws," and internal and external investigations relating to the alleged misconduct. (Id. ¶¶ 16, 140).

The "imprudent and illegal conduct" alleged in the Complaint is the same alleged conduct that forms the basis of the securities action. Specifically, the Complaint alleges that (i)

4

Defendants "delay[ed] the writedown of tens of millions of dollars of inventory, thereby artificially improving the Company's gross margin and inflating its reported operating results for the fourth quarter and year end 2000" (id. ¶ 32); (ii) Defendants' statements regarding CVS's "growth plans and business prospects were materially false and misleading because . . . they failed to disclose . . . the fact that the Company was being adversely impacted by the ongoing pharmacist shortage" (id. ¶ 58); and (iii) Defendants' statements regarding CVS's "growth plans and business prospects were materially false and misleading because . . . they failed to disclose the fact that CVS intended to close approximately 200 underperforming stores" (id.).

## ARGUMENT

I.    Plaintiff's Claims Should Be Dismissed For Failure to Make A Pre-Suit Demand

Plaintiff concedes that he did not make a pre-suit demand on the board of directors of CVS to bring the derivative claims alleged in the Complaint. (Compl. ¶ 127). Plaintiff has also failed to advance particularized allegations of fact that would support a reasonable inference that such a demand would have been futile if it had been made. The Complaint therefore should be dismissed pursuant to Federal Rule of Civil Procedure 23.1.

A.    Plaintiff Must Plead With Particularity that Demand Was Excused
      Under Delaware Law

Rule 23.1 requires a derivative complaint to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." See Fed. R. Civ. P. 23.1. Federal courts considering a motion to dismiss under Rule 23.1 must look to the law of the state of incorporation, in this case Delaware, see Compl. ¶ 12, to determine whether the pleading requirements imposed by that rule have been met. Kamen v. Kemper Fin. Servs., 500 U.S. 90, 96-97, 109 (1991) ("demand doctrine . . . is a matter of substance, not procedure"

5

and federal courts "must apply the demand futility exception as it is defined by the law of the State of incorporation"); Landy v. D'Alessandro, 316 F. Supp. 2d 49, 57 (D. Mass. 2004). As this Court has observed, the First Circuit "'vigorously enforces'" the particularity requirement in Rule 23.1 to effectuate the "'important policy'" behind the demand requirement. Landy, 316 F. Supp.2d at 58-59 (quoting Gonzalez Turul v. Rogatol Distribs., Inc., 951 F.2d 1, 2 (1st Cir. 1991)).

It is a fundamental principle of the Delaware General Corporation Law that "[t]he directors of a corporation and not its shareholders manage the business and affairs of the corporation." Levine v. Smith, 591 A.2d 194, 200 (Del. 1991) (internal citations omitted), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000); see 8 Del. Code Ann. § 141(a) (2003). "[A]ccordingly," the presumptive rule of Delaware law is that "the directors are responsible for deciding whether to engage in derivative litigation." Levine, 591 A.2d at 200; see also Grimes v. Donald, 673 A.2d 1207, 1215 (Del. 1996), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000); Spiegel v. Buntrock, 571 A.2d 767, 772-73 (Del. 1990).

Because stockholders' "ability to institute an action on behalf of the corporation inherently impinges upon the directors' power to manage the affairs of the corporation the law imposes certain prerequisites on a stockholder's right to sue derivatively." Spiegel, 571 A.2d at 773 (quoting Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 730 (Del. 1988)); see also Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). Delaware Court of Chancery Rule 23.1, which is substantively identical to its federal counterpart, "requires that shareholders seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a

6

demand on the directors to obtain the action desired, or to plead with particularity why demand is excused." Spiegel, 571 A.2d at 773 (citations omitted). "The purpose of pre-suit demand is to assure that the stockholder affords the corporation an opportunity to address an alleged wrong without resort to litigation, to decide whether to invest the resources of the corporation in litigation, and to control any litigation which does occur." Id.; see also Rales v. Blasband, 634 A.2d 927, 935 (Del. 1993).

A motion to dismiss under Court of Chancery Rule 23.1 for failure to make a demand "is not intended to test the legal sufficiency of the plaintiff's substantive claim. Rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." Levine v. Smith, C.A. No. 8833, slip op. at 14, 1989 WL 150784 (Del. Ch. Nov. 27, 1989), aff'd, 591 A.2d 194 (Del. 1991).

A plaintiff's pleading burden on a motion to dismiss for failure to comply with the pre-litigation demand requirement therefore is "more onerous than that required to withstand [an ordinary] motion to dismiss." Levine, 591 A.2d at 207 (citing Grobow v. Perot, 539 A.2d 180, 187 n.6 (Del. 1988)); see also Landy, 316 F. Supp.2d at 60 ("Rule 23.1 . . . requires more particularity in the complaint than an 'ordinary' Rule 12(b)(6) motion to dismiss."). As the Delaware Supreme Court has observed, the rule "does not permit a stockholder to cause the corporation to expend money and resources in discovery and trial in the stockholder's quixotic pursuit of a purported corporate claim based solely on conclusions, opinions or speculation." Brehm, 746 A.2d at 255.

Accordingly, "[c]onclusory 'allegations of fact or law [which are] not supported by allegations of specific fact may not be taken as true.'" Levine, 591 A.2d at 207 (quoting Grobow, 539 A.2d at 187). Similarly, "[g]eneralities, artistically ambiguous, all-encompassing

7

conclusory allegations are not enough. What is required are pleadings that are specific and, if conclusory, supported by sufficient factual allegations that corroborate the conclusion and support the proposition that demand is futile." Richardson v. Graves, C.A. No. 6617, slip op. at 6, 1983 WL 21109 (Del. Ch. Jun. 17, 1983). Failure to satisfy these pleading requirements is grounds for dismissal, Pogostin v. Rice, 480 A.2d 619, 622 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000), even if, unlike here, a plaintiff's claims appear to be otherwise meritorious, see, e.g., Landy, 316 F. Supp.2d at 59 (citing Brehm, 746 A.2d at 249); Kaufman v. Belmont, 479 A.2d 282, 286 (Del. Ch. 1984); Haber v. Bell, 465 A.2d 353, 357 (Del. Ch. 1983).

       B.     Plaintiff Has Not Adequately Pled Demand Futility Under Delaware Law

Delaware courts have articulated two alternative tests for whether a plaintiff has adequately established demand futility. The test set forth in Aronson v. Lewis, 473 A.2d 805 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000), applies in situations where "a decision of the board of directors is being challenged in the derivative suit." Rales v. Blasband, 634 A.2d 927, 933 (Del. 1993); see also Landy, 316 F. Supp. 2d at 57-58 (Aronson applies "when a shareholder challenges a decision *by the board of the corporation as a whole*.") (emphasis in original). Under Aronson, demand futility is established if the particularized facts alleged create a reasonable doubt that either "(1) the directors are disinterested and independent" with respect to the challenged transaction, or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d at 814; see also Landy, 316 F. Supp. 2d at 57-58.

Where a shareholder does not challenge a particular action undertaken by the board as a whole, the test for demand futility set forth in Rales v. Blasband applies. 634 A.2d at 933-34;

8

see also Landy, 316 F. Supp. 2d at 58; In re Baxter Int'l, Inc. S'holder Litig., 654 A.2d 1268, 1269-70 (Del. Ch. 1995). Under Rales, demand futility is established if the particularized factual allegations in the complaint raise a reasonable doubt regarding the ability of a majority of the board to exercise properly its business judgment in a decision on a demand had one been made at the time the suit was filed. Rales, 634 A.2d at 933-34.

Here, Plaintiff has not challenged a decision of CVS's board as a whole. The Complaint contains only vague references to all defendants – including Mr. Rickard, who has never been a director – "permitting," "allowing" or "failing to prevent" the improprieties it alleges. (See Compl. ¶¶ 15, 16, 44, 102, 106, 127(A), 131, 139). While a "*conscious* decision to refrain from acting" may constitute a "decision" of the board, see Aronson, 473 A.2d at 813 (emphasis added), board inaction may be deemed "conscious" only if a plaintiff has alleged specific facts demonstrating that the inaction was deliberate. See In re Baxter, 654 A.2d at 1271 (finding that director-defendants' failure to prevent employee wrongdoing was not deliberate because no facts were alleged to establish directors' knowledge of employee scheme).

The Complaint repeatedly asserts that CVS directors "knowingly" allowed management to engage in improper and illegal conduct but has alleged no facts to support this conclusion. (See Compl. ¶ 26). Accordingly, the Rales test for demand futility applies to all three claims in the Complaint.

Under Rales, "[d]irectors who are sued for failure to oversee subordinates have a disabling interest when the potential for liability is not 'a mere threat' but instead may rise to a 'substantial likelihood.'" In re Baxter, 654 A.2d at 1269 (internal quotations omitted); see also Guttman v. Huang, 823 A.2d 492, 501 (Del. Ch. 2003) (noting that if directors "face a 'substantial likelihood' of personal liability, their ability to consider a demand impartially is

9

compromised under <u>Rales,</u> excusing demand"). Claims that are premised on the presumption

that wrongdoing would not have occurred if directors had properly performed their duties are

alone insufficient to establish a substantial likelihood of director liability. See <u>In re Baxter,</u> 654

A.2d at 1271. Because Plaintiff has not alleged any facts showing that a majority of the CVS

Board faces a "substantial likelihood" of liability for the claims asserted, the Complaint must be

dismissed under Rule 23.1.

<div style="margin-left: 2em;">

1.    Plaintiff Has Not Demonstrated That A Majority
of the Board Face a Substantial Likelihood of
<u>Liability for the Claims in Counts I and III</u>

</div>

Plaintiff has not demonstrated that a majority of the board face a substantial likelihood of

liability for the claims asserted in Counts I and III of the Complaint. Any liability flowing from

the board "allowing" the challenged sales of CVS stock or the allegedly "imprudent and illegal

conduct" by the Company would be exempted by the Company's charter.[2] When a company's

charter exempts directors from liability for certain claims, directors – by definition – do not face

a "substantial likelihood" of liability for those claims. <u>In re Baxter,</u> 654 A.2d at 1270.

CVS's charter exempts its directors from liability for "monetary damages for breach[es]

of fiduciary duty . . . to the fullest extent permitted by Delaware law." (Gardener Aff., Ex. A at

32). Delaware General Corporation Law provides that a charter may eliminate the personal

liability of a director for breaches of his or her duty of care, but not breaches of his or her duty of

loyalty. See Del. Code Ann. § 102(b)(7) (2004); <u>In re Baxter,</u> 654 A.2d at 1270. The fiduciary

---

[2] The Court may take judicial notice of a company charter or other publicly filed document when deciding a motion to dismiss. See, e.g., <u>Guerra v. Teradyne, Inc.,</u> No. 01-11789-NG, 2004 WL 1467069, at *1-2 (D. Mass. Jan. 16, 2004); <u>Diceon Electronics, Inc. v. Calvary Partners,</u> 772 F. Supp. 859, 861 (D. Del. 1991) (holding that publicly filed documents are judicially noticeable on a motion to dismiss). Moreover, a court may appropriately consider a provision of the charter exculpating company directors from liability in determining whether a derivative complaint adequately pleads a "substantial likelihood" of liability. See <u>In re Baxter,</u> 654 A.2d at 1270.

duty of a director to act in good faith is "merely a subset of a director's duty of loyalty." Orman v. Cullman, 794 A.2d 5, 14, n.3 (Del. Ch. 2002).

Plaintiff conclusorily alleges in Counts I and III of the Complaint that Defendants breached their fiduciary duties of loyalty by "knowingly . . . allowing" or "failing to prevent" certain "imprudent and illegal conduct" by the Company, including the allegedly improper sale of stock by Mr. Ryan. (See Compl. ¶¶ 16, 127(A), 131, 139). A failure of oversight, however, can only be a breach of directors' duties of loyalty when "the directors were conscious of the fact that they were not doing their jobs." Landy, 316 F. Supp.2d at 74 (citations and quotations omitted).

Here, Defendants' alleged conduct cannot be considered "knowing" such that it may violate the duty of loyalty because Plaintiff has not pled *any* facts even suggesting a "'sustained or systemic failure of the board to exercise oversight – such as an utter failure to attempt to assure that a reasonable information and reporting system exists'" – much less facts suggesting that a majority of the board "knowingly" permitted any allegedly improper conduct. See id. at 75 (quoting In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 971 (Del. Ch. 1996)); see also In re Baxter, 654 A.2d at 1271 (finding that director-defendants' failure to prevent employee wrongdoing was not knowing because no facts were alleged to establish directors' knowledge of employee scheme). In fact, the only assertion Plaintiff makes in support of its allegation that CVS directors other than Mr. Ryan were aware of the allegedly improper conduct is another unsupported allegation that "defendants, because of their positions of control and authority as directors . . . of CVS, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of." (See Compl. ¶ 26). Such conclusory allegations unsupported by facts are not accepted as true on a motion to dismiss pursuant to Rule 23.1. Grossman v.

11

Johnson, 89 F.R.D. 656, 659 (D. Mass. 1981) (excuses for failure to make demand "must be supported by underlying facts"). Moreover, "[o]ne [sale] by one director . . . does not create an inappropriate interest on the part of the entire board." Landy, 316 F. Supp. 2d at 73.

Because Plaintiff has failed to raise any doubt that a majority of the board knew of any alleged misconduct or was intentionally not doing their jobs, Plaintiff's claims are nothing more than alleged breaches of Defendants' duties of care. See id. at 74 (finding that director-defendants' alleged failure to prevent employee wrongdoing involved duty of care where plaintiff had not adequately alleged breach of duty of loyalty by defendant-directors). Such a claim represents the "most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." In re Caremark, 698 A.2d at 967. In this case, those claims are expressly precluded by CVS's charter. (Gardener Aff., Ex. A ay 32). Thus, Plaintiff cannot demonstrate that a majority of directors would face any likelihood of liability for the claims in Counts I and III of the Complaint and therefore those claims should be dismissed pursuant to Rule 23.1.[3]

> 2.    Plaintiff Has Not Demonstrated That the Board
>        Would Face Substantial Liability for the Allegations
>        in Count II of the Complaint

Plaintiff can make no argument that a majority of the board would face a substantial likelihood of liability for the claims in Count II of the Complaint. Those claims are against only one director, Mr. Ryan. (See Compl. ¶ 135-36). Plaintiff has not alleged – because he cannot – that Mr. Ryan exercised such domination and control over the other members of the board that

---

[3] To the extent Plaintiff claims that his allegations that "each defendant" signed Forms 10-K and 10-Q filed with the United States Securities and Exchange Commission challenge a "decision" of the board (see Compl. ¶¶ 52, 108), the Complaint nevertheless fails under Aronson. The Complaint is totally devoid of factual allegations sufficient to raise a "reasonable doubt" either that "(1) the directors are disinterested and independent" with respect to the decision to sign the forms, or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Aronson, 473 A.2d at 814. Thus, "[a]n Aronson analysis would be a wasted effort." Landy, 316 F. Supp.2d at 72.

they were incapable of objectively considering a demand had one been made. Accordingly, the claims in Count II should also be dismissed pursuant to Rule 23.1.

II.    Plaintiff's Claims are Time-Barred

A federal court sitting in diversity applies the choice of law principles of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In this case, therefore, the Court must look to Massachusetts choice of law principles to determine the applicable statute of limitations.

Historically, Massachusetts courts considered statutes of limitations to be rules of procedure, and, as the forum state, applied Massachusetts law. See Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 645 (1994). In New England Tel. & Tel. Co. v. Gourdeau Constr. Co., 419 Mass. 658 (1995), the Supreme Judicial Court of Massachusetts abandoned that rule in favor of the functional approach set forth in the Restatement (Second) of Conflicts of Laws § 142 (the "Restatement"). 419 Mass. at 663-64; see also Kahn v. Kahn, 429 Mass. 572, 572-73 (1999) (noting that Gourdeau abandoned the long-standing rule that the statute of limitations of the forum applied and adopted the functional approach as stated in the Restatement).

Section 142 of the Restatement, as amended in 1988, has two subsections. Subsection one provides that in general, unless the exceptional circumstances of the case make such a result unreasonable, "[t]he forum will apply its own statute of limitations barring the claim." Restatement § 142(1). Thus, "[i]n a limited sense, for purposes of choice of law within the contexts of conflicts of law, the statute of limitations is procedural because no action may be brought in Massachusetts if such action is barred by the cognate Massachusetts statute of limitations." Mass. Prac. Series TM Civil Practice, Part 5, § 15.14 (3d. ed. 2004). Subsection two addresses situations in which the forum state's statute of limitations allows the claim. In that

13

situation, the Restatement provides that the forum state will apply its own statute of limitations permitting the claim unless "maintenance of the claim would serve no substantial interest of the forum" and "the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." Restatement § 142(2).

Here, the Court need not determine either (i) whether Massachusetts has a substantial interest or (ii) which state has the more significant relationship to the parties, because all of Plaintiff's claims are barred under the applicable Massachusetts statute of limitations. See Restatement § 142(1).

A.    Plaintiff's Claims Are Time-Barred Under Massachusetts Law

Actions alleging breaches of fiduciary duty sounding in tort, such as the claims alleged by Plaintiff, must be commenced within three years after the cause of action accrues. See Mass. Gen. Laws ch. 260, § 2A (2004); see also Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123 (1st Cir. 1997) (applying Massachusetts torts statute of limitations to claim for breach of fiduciary duty); Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 517-18 (1997) (applying three year statute of limitations to shareholder derivative action for breach of fiduciary duty through diversion of corporate opportunities and self-dealing); Woodcock v. Am. Inv. Co., 376 Mass. 169 (1978) (applying tort statute of limitations to action claiming conversion); Howell v. Birnberg, No. 922842A, 1994 WL 879659, at *2, n.6 (Mass. Super. Feb. 10, 1994) (classifying breach of fiduciary duty claim as a tort because claim was "essentially a reallegation of the fraud claim"). Similarly, unjust enrichment claims based in tort are subject to a three-year statute of limitations. See Epstein v. C.R. Bard, Inc., No. Civ. A.03-12297-RWZ, 2004 WL 1598912, at *3 (D. Mass. July 19, 2004) (applying three year limitations period to unjust enrichment claim where plaintiff alleged that defendant unjustly enriched by using plaintiff's technology and trade

14

secrets); <u>McKenna v. Scherr</u>, No. 293427, 2004 WL 1854146 (Mass. Land Court Aug. 19, 2004) (applying three year statute of limitations period to unjust enrichment claim based on conversion). Plaintiff filed his Complaint on December 17, 2004. Therefore, his claims are barred if they accrued on or before December 17, 2001.

An action in tort generally accrues at the time of a plaintiff's injury. <u>Joseph A. Fortin Constr., Inc., v. Mass. Housing Fin. Agency</u>, 392 Mass. 440, 442 (1984); <u>Stark v. Advanced Magnetics, Inc.</u> 50 Mass. App. Ct. 226, 232-33 (Mass. App. Ct. 2000). Here, Plaintiff alleges that CVS was injured by (i) Defendants' allowance of insider stock sales while in possession of material non-public information (Compl. ¶ 129); (ii) bonuses paid to Messrs. Ryan and Rickard (<u>id.</u> ¶ 135); and (iii) the Company's allegedly "imprudent and illegal" conduct which prompted the securities actions (<u>id.</u> ¶¶ 16, 140).

All of the alleged injuries occurred prior to December 17, 2001. The only insider stock sales identified in the Complaint were made in March and May of 2001. (<u>Id.</u> ¶¶ 99, 102). The challenged bonuses were allegedly paid to Messrs. Ryan and Rickard in 2000. (<u>Id.</u> ¶ 97). And the allegedly "imprudent and illegal conduct" that Defendants supposedly "caused or allowed" occurred well before December 17, 2001.

Specifically, the Complaint alleges that the markdown freeze occurred during the fourth quarter of 2000. (<u>Id.</u> ¶¶ 27, 29). With respect to the pharmacist shortage, the Complaint alleges that: (i) "as early as 1997, the pharmacist shortage had been identified internally at CVS as a problem negatively impacting the Company's operations" (<u>id.</u> ¶ 43); (ii) "[b]y late 2000, senior management . . . stressed the need to improve recruitment of pharmacists in order to try and address the problem" (<u>id.</u>); (iii) "by the end of 2000 . . . it had become apparent internally at CVS that the Company's efforts to recruit and retain adequate levels of pharmacist staffing were

insufficient" (id. ¶ 47); and (iv) "[b]y February 2001, the pharmacist shortage resulted in customers experiencing unreasonably long waits to fill prescriptions, temporary store closings and reduced store hours" (id. ¶ 48).  As to store closings, Plaintiff alleges that CVS made the decision to close 200 underperforming stores "[b]y the first quarter of 2001" but did not disclose it until October 2001.  (Id. ¶¶ 37, 91).  Furthermore, all of the alleged misstatements identified in the Complaint were made before December 17, 2001.[4]  Because all of Plaintiff's claims accrued before December 17, 2001, they are time-barred and should be dismissed.

Moreover, the allegations in the Complaint itself conclusively establish that CVS shareholders knew of the allegedly "imprudent and illegal conduct" that forms the basis of Plaintiff's claims well in advance of December 17, 2001.  The Complaint alleges that "the truth began to emerge" as early as June 27, 2001, when CVS announced that the Company's earnings would be lower than expected due to increased pressure on gross earnings and the adverse impact of the pharmacist shortage.  (Id. ¶¶ 8, 80-82).  The Complaint further alleges that "[t]he [f]ull [t]ruth" was revealed on October 30, 2001, when CVS announced its plan to close 200 stores.  (Id. ¶ 91).

The only allegation in the Complaint regarding activity that occurred after December 17, 2001, relates to a press release issued by the Company on February 5, 2002, in which CVS announced its fourth quarter 2001 and year-end 2001 results.  (Id. ¶ 94).  This press release did not contain any new information relating to the allegedly "imprudent and illegal conduct."

---

[4] See, e.g., Compl. ¶ 45 (analyst report issued on October 31, 2000), ¶ 46 (magazine article issued on December 11, 2000), ¶¶ 53-56 (CVS press release and conference call on February 6, 2001); ¶ 60 (CVS annual report issued in March 2001), ¶¶ 66, 71-72 (CVS press releases issued between March and June 2001), ¶ 67 (CVS Form 10-K filed on March 19, 2001), ¶ 74 (meeting with securities analysts on May 10, 2001), ¶ 75 (CVS Form 10-Q filed on May 11, 2001), ¶ 88 (CVS press release issued on July 31, 2001), and ¶ 89 (CVS Form 10-Q filed on August 14, 2001).

Instead, the Complaint alleges "*[a]s previously indicated*, defendants announced that CVS would record a $352.5 million restructuring charge and close 229 stores." (Id.) (emphasis added).

Furthermore, the original securities complaint, Turberg v. CVS Corp., 01-CV-11464 ("Turberg Complaint"), was filed in this district on August 22, 2001. The Turberg Complaint alleges violations of federal securities laws based on the alleged markdown freeze, the Company's alleged failure to timely disclose the adverse impact of the pharmacist shortage, and the Company's alleged failure to timely disclose that it would have to scale back its expansion plans. (Gardener Aff., Ex. B at ¶ 26).[5] Additional complaints filed between August and October 2001 assert the same claims. Thus, there is no question that "disinterested shareholders knew of the wrongful activity" before December 17, 2001. Demoulas, 424 Mass. at 518.

B.    Plaintiff's Claims are Also Time-Barred Under Delaware Law

Generally, a court in Massachusetts looks to the law of the state of incorporation to determine the liability of corporate officers. See Harrison v. Netcentric Corp., 433 Mass. 465, 470 (2001) (affirming Massachusetts' "long-standing policy of applying the law of the State of incorporation to internal corporate affairs"); Beacon Wool Corp. v. Johnson, 331 Mass. 274, 279 (1954) (looking to Delaware law to determine liability of defendant directors of a Delaware corporation). If the Court were to determine the applicable limitations period under this analysis, it would look to the law of Delaware, the state in which CVS is incorporated. Plaintiff's claims are also time-barred under under Delaware law.

---

[5] "It is well accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Kowalski v. Gagne, 914 F.2d 299, 305-06 (1st Cir. 1990); see also Lussier v. Runyon, 50 F.3d 1103, 1114 n.14 (1st Cir. 1995) (stating that courts may take judicial notice of their own records and the records of sister tribunals); Graham v. Smith, 292 F. Supp. 2d 153, 155 n.2 (D. Me. 2003) (taking judicial notice of complaint in related state court action).

17

Delaware has a three-year statute of limitations for money damage claims arising out of a director's breach of fiduciary duty. See Del. Code Ann. tit. 10, § 8106 (2004); see also Halpern v. Barran, 313 A.2d 139, 141 (Del. Ch. 1973) (noting that it is "now firmly established that the three year statute of limitations applies to shareholder derivative actions which seek recovery of damages or other essentially legal relief"). Under Delaware law, a cause of action accrues at the moment of the wrongful act, even if the plaintiff is ignorant of the cause of action. See David B. Lilly Co. v. Fisher, 18 F.3d 1112, 1117 (3d Cir. 1994); Seidel v. Lee, 954 F. Supp. 810, 816 (D. Del. 1996). As discussed above, all of the alleged wrongful acts occurred well before December 17, 2001.

Accordingly, Plaintiff's claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) regardless of whether the Court applies the Massachusetts or the Delaware limitations period.[6]

III.    Plaintiff's Claim Must be Dismissed For Lack of Subject Matter Jurisdiction

Apart from the grounds for dismissal discussed above, the Complaint should be dismissed under Federal Rules of Civil Procedure 12 (b)(1) for failure to allege facts sufficient to establish a basis for federal subject matter jurisdiction.

Plaintiff predicates federal jurisdiction over his claims on diversity of citizenship under 28 U.S.C. § 1332. (Compl. ¶ 22). "Diversity jurisdiction exists when the claims in the complaint are between citizens of different states and the matter in controversy exceeds the sum

---

[6] Plaintiff's claims against the director-defendants also fail under Rule 12(b)(6) because, as discussed above, those defendants are protected from liability by the exculpatory provision in the Company's charter. Plaintiff's claim against Mr. Rickard – the only non-director-defendant – likewise fails under Rule 12(b)(6) because the Complaint does not allege any facts suggesting that Mr. Rickard knew about any of the alleged misconduct. Nor does the Complaint allege that Mr. Rickard sold any stock while in possession of material non-public information. "Simply put, no basis in fact or law is given to support a grant of relief" against Mr. Rickard. Continuing Creditors Comm. of Star Telecomms., Inc., v. Edgecomb, No. Civ.A.03-278-KAJ, 2004 WL 2980736, at *10 ( D. Del. Dec. 21, 2004) (dismissing breach of loyalty claim against officers).

18

or value of $75,000, exclusive of interests or costs." Soler v. Puerto Rico Tel. Co., 230 F. Supp. 2d 232, 234 (D. P.R. 2002); see also Bank One, Texas, N.A. v. Montle, 964 F. 2d 48, 49 (1st Cir. 1992). The existence of diversity must be evident from the face of the complaint in order for a federal court to assume diversity. Soler, 230 F. Supp. 2d at 234. Moreover, "[w]hen a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989) (emphasis in original).

Although Plaintiff alleges that the Company is a Delaware corporation with its principal executive offices in Woonsocket, Rhode Island (Compl. ¶ 12), Plaintiff does not allege his own citizenship, nor does he allege the citizenship of any of the individual defendants, or the dollar value of the amount in controversy. The Complaint, therefore, is plainly defective, and should be dismissed on this ground alone. See, e.g., Citizens Comm. to Save Land the Grant R.R. v. Burlington N., Inc., 708 F. 2d 1430, 1435 (9th Cir. 1983) (affirming district court dismissal for lack of jurisdiction where plaintiff made no allegations in complaint concerning citizenship or dollar value of amount in controversy); Soler, 230 F. Supp. 2d at 234 (concluding that complaint which invoked diversity as the basis for federal jurisdiction but failed to allege citizenship, violated Rule 8 and was insufficient to confer jurisdiction on the court); Cooper v. Cianfrocca, No. 01 CIV. 4749-LAK, 2001 WL 640808, at *1 (S.D.N.Y. June 7, 2001) (dismissing case *sua sponte* for failure to allege facts sufficient to establish diversity jurisdiction).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed pursuant to Federal Rule of Civil Procedure 23.1 for failure to made a pre-suit demand or to allege that such demand would have been futile, pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and pursuant to

Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Defendants also

respectfully request that the Court grant it such other and further relief as it may deem just and

proper.

Dated: Boston, Massachusetts
       March 18, 2005

                         MINTZ LEVIN COHN FERRIS GLOVSKY
                         & POPEO, P.C.


                         By: _____
                              Michael S. Gardener, BBO #185040

                         One Financial Center
                         Boston, Massachusetts  02111
                         (617) 542-6000

                                   - and -

                         DAVIS POLK & WARDWELL
                         Dennis E. Glazer (*admitted pro hac vice*)
                         Trisha Lawson (*admitted pro hac vice*)
                         450 Lexington Avenue
                         New York, New York 10017
                         (212) 450-4000

                         *Attorneys for Defendants*